**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLEARWATER BEACH RESORT REGIONAL CENTER, LLC and USHI RE FI LLC,

Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendant.

Case No.

______________________________________/

# **COMPLAINT**

Plaintiffs Clearwater Beach Resort Regional Center, LLC (the "**Regional Center**") and USHI RE FI LLC (the "**Company**"), through their undersigned counsel, by way of complaint against defendant United States Citizenship and Immigration Services ("**USCIS**"), hereby allege and state as follows:

## **INTRODUCTION**

1. On November 3, 2014, USCIS authorized the Regional Center to act as an authorized regional center under the Employment-Based Fifth Preference ("**EB-5**") Immigrant Investor Program (the "**EB-5 Program**"), pursuant to Section 203(b)(5)(E) of the Immigration and Nationality Act (the "**INA**"), 8 U.S.C. § 1153(b)(5)(E), in Hernando County, Hillsborough County, Pasco County, and

Pinellas County in the State of Florida.

2. On July 14, 2022, the Regional Center submitted to USCIS a *Form I-956, Application for Regional Center Designation*, seeking redesignation as an authorized regional center and requesting an amendment of its authorized regional center designation, pursuant to Section 203(b)(5)(E) of the INA, to include, in addition to the foregoing counties, Lake County, Manatee County, Orange County, Polk County, and Sarasota County in the State of Florida.

3. On September 19, 2023, USCIS approved the Regional Center's request.

4. On April 30, 2025, the Regional Center submitted to USCIS a *Form I-956, Application for Regional Center Designation*, requesting an amendment of its authorized regional center designation, pursuant to Section 203(b)(5)(E) of the INA, to include the entire State of Florida as well as the entire State of North Carolina and the entire State of Georgia.

5. On March 23, 2026, USCIS approved the Regional Center's request.

6. The Company was organized to provide a target of $20 million, and up to $40 million, in financing in the form of a loan (the "**EB-5 Loan**") to USHI RE Investors LLC (the "**Borrower**"), which owns fifty percent (50%) of, and will make a loan to, USHI RE Holdings LLC (the "**JCE**") for use in connection with the development of the NCH College of Osteopathic Medicine (the "**Project**"), which is located in Naples, Florida and which will be operated by Bay College of Osteopathic Medicine LLC. The EB-5 Loan will be secured by a collateral pledge

by the Borrower of its membership interest in the JCE, and will be subordinated to any bridge financing obtained for the Project.

7. The Project, which is located in a targeted employment area, *see* 8 U.S.C. § 1153(b)(5)(D)(viii); 8 C.F.R. § 204.6(e), has a development budget of approximately $81.8 million, funded through a combination of senior financing in the form of a construction loan in the approximate amount of $47.8 million, the EB-5 Loan in the amount of $20 million (with additional amounts loaned to be used to decrease the amount of the construction loan), and approximately $14 million in sponsor equity. The Project is expected to create a total of 772.7 direct and indirect new jobs, which exceeds the number of jobs needed for EB-5 purposes, even if the Company raises the maximum amount of $40 million from EB-5 investors.

8. Construction of the Project, the pre-development and design of which began in the second quarter of 2025, is expected to be completed in the first quarter of 2028.

9. The Company will raise the funds to be loaned to the JCE through an offering made to foreign investors pursuant to the EB-5 Program. In connection with that offering, 25 individual investors, and up to 50 individual investors (each, an "**Investor**" and collectively, the "**Investors**"), will each acquire a limited liability company membership interest in the Company after making a capital contribution in the amount of $800,000 and paying an additional amount in respect of administrative fees.

10. As it was required to do by the changes to the law governing the EB-5 Program that were enacted as part of the EB-5 Reform and Integrity Act of 2022 (the "**RIA**"), the Regional Center sought approval of the Company as a new commercial enterprise (an "**NCE**") in which foreign individuals participating in the EB-5 Program (*i.e.* the Investors) may invest. To that end, the Regional Center, on behalf of the Company, filed with USCIS a *Form I-956F, Application for Approval of Investment in a Commercial Enterprise* (the "**Form I-956F**"), which was accompanied by a number of required documents, including a comprehensive business plan, which described the Company and the Project in detail and which contained all of the required information regarding the Company, the JCE, and the Project, and which demonstrated that more than enough jobs will be created per Investor to satisfy the EB-5 Program's requirements. *See* 8 U.S.C. § 1153(b)(5)(F)(i)(II); *see also* 8 U.S.C. § 1153(b)(5)(E)(iv)(II).

11. Despite the passage of more than three months since USCIS received the Form I-956F and the supporting documentation, USCIS has failed to issue a final determination with respect to the Form I-956. The Regional Center and the Company believe that the delay associated with USCIS's review and adjudication of the Form I-956F is unreasonable and that USCIS is acting arbitrarily and capriciously in failing to review and adjudicate the Form I-956F notwithstanding its having received the Form I-956F and the materials accompanying it many months ago.

12. USCIS's continuing delay in adjudicating the Form I-956F has

affected the funding of the Project. Until the Form I-956F is approved, the Company will not release any of the funds raised and to be raised from the Investors to the Borrower. This delay harms the Regional Center, which is the sponsor of the Project for EB-5 purposes, as it will be tainted in the eyes of individuals who seek to participate in the EB-5 Program and of entities that would otherwise retain the Regional Center to sponsor other EB-5 projects. The Company is also harmed, as its ability to make the EB-5 Loan to support the Investors' participation in the EB-5 Program—which is the Company's *raison d'être*—is destroyed.

13. So, too, this delay harms the Investors, who will become members of the Company, for they cannot use their investments in the Company to support their petitions for lawful permanent resident status under the EB-5 Program until the Form I-956F is approved. Moreover, the Investors' investments in the Company must remain at risk for two years from the time their funds are loaned to the Borrower and deployed to the JCE. The delay that is the subject of this action is preventing the start of that two-year period, which effectively will result in a longer timeline for the Investors to obtain lawful permanent resident status under the EB-5 Program than the Investors anticipated.

14. The Form I-956F meets all the requirements for adjudication. USCIS's continuing and inexcusable delay in acting on the Form I-956F warrants an exercise of this Court's mandamus power under the Mandamus and Venue Act, 28 U.S.C. § 1361, (the "**Mandamus Act**"), and this Court's authority under the

Administrative Procedures Act, 5 U.S.C. §§ 555 and 701 *et seq*. (the "**APA**").

15. The continued delay in adjudicating the Form I-956F is causing significant harm to the Regional Center and the Company. Accordingly, the Regional Center and the Company respectfully request that this Court issue an order, pursuant to the Mandamus Act and the APA, directing USCIS to adjudicate the Form I-956F within a time frame that this Court deems appropriate under the circumstances.

**PARTIES**

16. The Regional Center is a limited liability company organized under the laws of the State of Florida and having its principal place of business at 5600 Mariner Street, Suite 200, Tampa, Florida 33609.

17. The Company is a limited liability company organized under the laws of the State of Florida and having its principal place of business at 5600 Mariner Street, Suite 200, Tampa, Florida 33609.

18. USCIS is a federal agency and a component of the United States Department of Homeland Security, a cabinet-level department of the federal government of the United States, and maintains its headquarters at 5900 Capital Gateway Drive, Camp Springs, Maryland 20588. The Immigrant Investor Program Office of USCIS, which maintains its headquarters at 131 M Street N.E., 3rd Floor, Washington, DC 20529, oversees the EB-5 Program.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the Regional Center's claims arise under the laws of the United States, specifically the INA, as amended by the RIA, and its implementing regulations.

20. Further, this Court has subject matter jurisdiction over this action and may grant relief pursuant to the Mandamus Act and the APA.

21. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1391(e)(1) because this is an action against an agency of the United States, brought in the district where the Regional Center and the Company maintain their principal place of business.

## LEGAL AND FACTUAL BACKGROUND

### I. The EB-5 Program

22. The United States Congress created the EB-5 Program in 1990 to stimulate the United States economy through job creation and capital investment by foreign investors seeking lawful permanent resident status in the United States. Under the EB-5 Program, a foreign citizen may seek to obtain lawful permanent resident status by investing either $800,000 or $1,050,000—the greater amount is required unless the investment pertains to a project located in a high-unemployment area or a rural area, or to an infrastructure project—in a qualifying NCE, that investment creates at least ten full-time jobs, and the foreign

citizen satisfies the other requirements of the EB-5 Program. *See generally* 8 U.S.C. § 1153(b)(5).

23. In 1992, Congress created the Immigrant Investor Pilot Program, which is now known as the Immigrant Investor Program. This subset of the EB-5 Program permits an EB-5 investor to invest the requisite capital in a qualifying NCE through a USCIS-approved regional center. A regional center is an entity for promoting economic growth and job creation in a particular geographic region of the United States, and each regional center may sponsor one or more NCEs. One of the primary benefits to foreign investors who invest in an NCE through a regional center is that they are able to count indirect jobs—that is, jobs that are created outside of the NCE by a job-creating enterprise—in order to satisfy the job creation requirements of the EB-5 Program. *See generally* 8 U.S.C. § 1153(b)(5)(E).

24. On March 15, 2022, the RIA took effect, making sweeping changes to the INA and to the EB-5 Program. *See* Pub. L. 117-103, 136 Stat. 49, 1070 (Mar. 15, 2022). Amongst those changes is the requirement that a regional center seek approval of an NCE in which foreign individuals who wish to participate in the EB-5 Program may invest. A foreign investor may not file his or her *Form I-526E, Immigrant Petition by Regional Center Investor*, until the regional center files the application for such approval, which is a Form I-956F. *See* 8 U.S.C. § 1153(b)(5)(F)(i).

## II. The Form I-956F

25. On July 1, 2026, the Regional Center filed the Form I-956F with USCIS, seeking approval for the financing of the Project through the Company's EB-5 Loan to the Borrower. With the Form I-956F, the Regional Center remitted to USCIS a check in the amount of $17,795, representing payment of the fee for filing the Form I-956F.

26. In support of the Form I-956F, the Regional Center submitted to USCIS a number of required documents totaling more than 650 pages, including a *Comprehensive Business Plan for EB-5 Investment* and an *Economic Analysis of the NCH COM Project* prepared by Wright Goforth Consulting, one of the nation's leading consulting firms for regional center applications, describing the substantive positive economic impact of the pooled investment of the Investors' funds, including the creation of 772.7 total direct and indirect jobs.

27. On July 8, 2026, USCIS issued Receipt No. INF2660022083 to the Regional Center, acknowledging receipt of the Form I-956F and the filing fee on July 1, 2026.

## III. USCIS Has Unreasonably Delayed Acting on the Form I-956F

28. Despite the Regional Center's having submitted a completed and comprehensive Form I-956F on July 1, 2026, USCIS has unreasonably delayed in adjudicating the Form I-956F.

29. Specifically, USCIS has failed to provide any additional information to the Regional Center or to the Company, has failed to adjudicate the Form I-

956F, and has not provided any indication of when the review of the Form I-956F might be completed.

30. USCIS has never explained the reason for the lengthy and continuing delay as to the Form I-956F, has not provided any indication of when the review of the Form I-956F might be completed, and has unreasonably delayed in adjudicating the Form I-956F.

31. USCIS appears to have obviated its statutory obligation to process the Form I-956F in a timely manner.

## IV. The Regional Center and the Company Will Suffer Significant Harm If Relief Is Not Granted

32. As a result of USCIS's unreasonable, protracted, and unconscionable delay in the adjudication of the Form I-956F, the Regional Center and the Company have suffered and will continue to suffer harm.

33. As is noted above, until the Form I-956F is approved, the Company will not release any of the funds raised and to be raised from the Investors to the Borrower to be loaned to the JCE. This delay harms the Regional Center, which is the sponsor of the Project for EB-5 purposes, as it will be tainted in the eyes of individuals who seek to participate in the EB-5 Program and of entities that would otherwise retain the Regional Center to sponsor other EB-5 projects.

34. The Regional Center is further harmed by the fact that Forms I-956F seeking approval of other projects are being adjudicated within the average processing time. The longer the Form I-956F remains pending and the Investors' funds remain in escrow, the more anxious and disappointed the Investors will

become. That, in turn, creates a meaningful risk that Investors may seek to withdraw from the Company in order to reinvest their capital in projects sponsored by other regional centers that are progressing more quickly than the Project.

35. The Company is also harmed, as its ability to make the EB-5 Loan to support the Investors' participation in the EB-5 Program—which is the Company's *raison d'être*—is destroyed. Any withdrawals by Investors would render the raise incomplete and would force the Company to restart fundraising efforts, potentially delaying the Project and jeopardizing its timeline.

36. So, too, this delay harms the Investors, who will become members of the Company, for they cannot use their investments in the Company to support their petitions for lawful permanent resident status under the EB-5 Program until the Form I-956F is approved, as the Regional Center has made the prudent decision to refrain from deploying the Investors' funds to the Borrower until the Form I-956F is approved, thus protecting the Investors by avoiding having their funds tied up in the Project without the benefit of obtaining lawful permanent resident status. Moreover, because the Investors' investments in the Company must remain at risk for two years from the time their funds are deployed to the Borrower and loaned to the JCE, the delay that is the subject of this action is preventing the start of that two-year period, which effectively will result in a longer timeline for the Investors to obtain lawful permanent resident status under the EB-5 Program than the Investors anticipated.

37. According to data made available by USCIS, the median processing time—that is, the time it took to complete half of the cases in a given time period—for a Form I-956F has varied during the fiscal years since the enactment of the RIA.[1] Specifically, in fiscal year 2024, the median processing time for a Form I-956F was 10.2 months, in fiscal year 2025, the median processing time for a Form I-956F was 6.9 months, and in the period of October 1, 2025 to July 31, 2026 for fiscal year 2026, the median processing time for a Form I-956F was 6.4 months. *See* https://egov.uscis.gov/processing-times/historic-pt (last visited Oct. 1, 2026).

38. Also according to data made available by USCIS, as of the end of the third quarter of fiscal year 2026 (that is, as of June 30, 2026), there remained 177 Forms I-956F still pending before USCIS. *See* https://www.uscis.gov/tools/reports-and-studies/immigration-and-citizenship-data (last visited Oct. 1, 2026).

39. According to data made available by USCIS, 80% of Forms I-956F adjudicated over the six-month period ending on October 1, 2026 were completed in 11.5 months, though USCIS does not differentiate between Forms I-956F filed in respect of projects located in rural areas and Forms I-956F filed in respect of projects located in high unemployment areas, which renders USCIS's data misleading and unreliable:

[1] The federal fiscal year is from October 1 to September 30.



**Select your form, form category, and the office that is processing your case**

*Refer to your receipt notice to find your form, category, and office. For more information about case processing times and reading your receipt notice, visit the More Information About Case Processing Times page.*

Please complete all of the required fields marked with an * asterisk.

Form *

I-956F | Application for Approval of an Investment in a Commer

Form Category *

Application for Approval of an Investment in a Commercial Ent

Field Office or Service Center *

Immigrant Investor Program Office

Get processing time

**Processing time for Application for Approval of an Investment in a Commercial Enterprise (I-956F) at Immigrant Investor Program Office**

80% of cases are completed within

11.5

Months

Check your case status to track the status of an immigration application, petition, or request.

What does this processing time mean?

We generally process cases in the order we receive them. This processing time is based on how long it took us to complete 80% of adjudicated cases over the past six months. Each case is unique, and some cases may take longer than others. Processing times should be used as a reference point, not an absolute measure of how long your case will take to be completed.

*See* https://egov.uscis.gov/processing-times/ (last visited Oct. 1, 2026). Thus, the actual processing time for a Form I-956F has been, and presently is, far longer than the median processing times for fiscal year 2024 or fiscal year 2025 to date, and 177 Forms I-956F remained pending as of June 30, 2026, the most recent date for which such information is publicly available.

40. Here, the Form I-956F has been pending before USCIS for more than three months, and in light of the delays in processing Forms I-956F noted above, there is no reason for the Regional Center and the Company to believe that the Form I-956F will be adjudicated anytime soon.

41. If USCIS continues this unreasonable delay by failing to adjudicate the Form I-956F, the Regional Center and the Company will continue to suffer significant hardship.

42. The Regional Center and the Company have no other adequate remedy available to them other than filing the instant action.

43. The Regional Center and the Company recognize that the RIA included an amendment to the INA providing for administrative appellate review by the Administrative Appeals Office of USCIS "of any determination made under this paragraph," including "an application for approval of a business plan filed under subparagraph (F)." 8 U.S.C. § 1153(b)(5)(P)(i)(II). The Regional Center and the Company also recognize the amendment limits courts' ability to review such determinations:

> Subject to subparagraph (N)(v) and section 1252(a)(2) of this title, and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review a determination under this paragraph until the regional center, its associated entities, or the alien investor has exhausted all administrative appeals.

8 U.S.C. § 1153(b)(5)(P)(ii).

44. Despite this language, the Regional Center and the Company may obtain the relief they seek in this action, as they are neither asking the Court to compel USCIS to approve the Form I-956F nor seeking to overturn a decision by USCIS to deny the Form I-956F as USCIS has issued no such decision.

Accordingly, the exhaustion requirement that the RIA added to the INA does not apply in these circumstances.

45. The Regional Center and the Company have retained the undersigned as counsel in this matter and have agreed to pay a reasonable fee for their services.

46. All conditions precedent to bringing this action, if any, have occurred or have been performed, waived, or excused.

**COUNT I**
**MANDAMUS ACT**
**(28 U.S.C. § 1361)**

47. The Regional Center and the Company reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

48. The Regional Center and the Company seek a writ of mandamus to compel USCIS "to perform a duty owed to" them. *See* 28 U.S.C. § 1361.

49. USCIS has failed to discharge its mandated duties by unlawfully and unreasonably delaying the adjudication of the Form I-956F despite the same being in a condition supporting adjudication.

50. As a result of USCIS's failure to adjudicate the Form I-956F, the Regional Center and the Company have suffered and continue to suffer harm and damages, entitling them to declaratory and other relief.

51. The Regional Center and the Company have exhausted all available administrative remedies and there exists no other adequate remedy.

**COUNT II**
**ADMINISTRATIVE PROCEDURE ACT**
**(5 U.S.C. §§ 555 and 701 *et seq*.)**

52. The Regional Center and the Company reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

53. USCIS is charged with the mandatory responsibility of administering and implementing the INA.

54. USCIS has a mandatory duty to adjudicate the Form I-956F within a "reasonable time."

55. USCIS has violated the APA by failing to adjudicate the Form I-956F timely, which constitutes agency action that is arbitrary and capricious and not in accordance with law.

56. Section 555 of the APA commands administrative agencies to conclude matters presented to the agency for decision "within a reasonable time." *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties … and **within a reasonable time**, each agency **shall** proceed to conclude a matter presented to it.") (emphases added).

57. The APA explicitly provides a right of judicial review to a person "adversely affected or aggrieved" by an agency's "fail[ure] to act" or other such agency action. 5 U.S.C. § 702.

58. When, as here, a proper showing is made, "[t]he reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 551(13) (term "agency action" includes "the

whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.”). The Court must also “hold unlawful and set aside agency action” that is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law”; “in excess of statutory jurisdiction, authority, or limitations, or short of statutory right”; or “without observance of procedure required by law.” 5 U.S.C. § 706(2)(A), (C), (D).

59. USCIS has a clear and mandatory duty to adjudicate the Form I-956F.

60. The Regional Center and the Company have complied with all the requirements for adjudication of the Form I-956F.

61. USCIS has unreasonably withheld, and unlawfully and unreasonably delayed, acting on the Form I-956F in violation of the INA and the APA.

62. USCIS has failed to discharge its mandated official duties by abusing its discretion and acting in an arbitrary and capricious manner in failing to adjudicate the Form I-956F.

63. As a result of USCIS’s failure to adjudicate the Form I-956F, the Regional Center and the Company have suffered and continue to suffer harm and damages, entitling them to declaratory and other relief.

64. The Regional Center and the Company have no other adequate legal remedy available to them.

## RELIEF REQUESTED

**WHEREFORE**, the Regional Center and the Company pray that this Court enter a judgment in their favor and against USCIS as follows:

a. compelling USCIS to perform its duty to adjudicate the Form I-956F within a time frame this Court deems appropriate under the circumstances;

b. declaring USCIS's unreasonable delay and failure to adjudicate the Form I-956F to be in direct violation of the APA and the INA; and

c. granting to the Regional Center and the Company such other and further relief as this Court deems just and proper.

Dated: October 5, 2026

/s/ Jillian C. Postal

Jillian C. Postal (Florida Bar No. 1011576)
SAUL EWING LLP
701 Brickell Avenue, 17th Floor
Miami, Florida 33131
telephone: (305) 428-4500
email: jillian.postal@saul.com

Attorneys for Plaintiffs Clearwater Beach Resort Regional Center, LLC and USHI RE FI LLC